Michael S. Kun (SBN 208684)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone: (310) 556-8861
Facsimile: (310)-553-2165
mkun@ebglaw.com

Attorneys for Defendant
GRACE HOLMES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MADRIZ-RIVAS, individually, and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>GRACE HOLMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | Case No.: 5:24-cv-07061-PCP<br><br>*Assigned to Hon. P. Casey Pitts, Crtrm. 8*<br><br>**DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 6

II. STATEMENT OF FACTS .............................................................................................. 6

    A. Plaintiff's Complaint ............................................................................................. 6

    B. Evidence ................................................................................................................ 7

III. ARGUMENT ................................................................................................................... 7

    A. In *Dart Cherokee*, the Supreme Court Confirmed That There is No Presumption Against CAFA Removal. ........................................................................................ 7

    B. A "Preponderance of Evidence" Standard Applies To The Amount In Controversy ... 8

    C. In Accordance With Ninth Circuit Precedent, Defendant's Conservative Calculations Of The Amount In Controversy Are Reasonable In Light Of Plaintiff's Allegations .. 9

        1. Minimum Wage. ........................................................................................ 9

        2. Overtime. ................................................................................................. 10

        3. Meal Periods. .......................................................................................... 10

        4. Rest Periods. ........................................................................................... 11

        5. Business Expenses. ................................................................................. 12

        6. Waiting Time Penalties For Untimely Payment Of Wages At Employment End. ........................................................................................................... 12

        7. Wage Statement Penalties. ..................................................................... 13

        8. Penalties for Untimely Payment of Wages During Employment. .......... 14

        9. Attorneys' Fees. ...................................................................................... 14

        10. Business Records And Injunctive Relief. ............................................... 15

IV. TOTAL AMOUNT IN CONTROVERSY ................................................................... 16

V. CONCLUSION .............................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alvarez v. Office Depot, Inc.*
  No. CV 17-7220 PSG, 2017 WL 5952181 (C.D. Cal. Nov. 30, 2017)...................................11

*Arias v. Residence Inn by Marriott*
  936 F.3d 920 (9th Cir. 2019) .................................................................................................9

*Bryant v. NCR Corp.*
  284 F. Supp. 3d 1147 (S.D. Cal. 2018)............................................................................10, 11

*Cabrera v. South Valley Almond Company, LLC*
  No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585 (E.D. Cal. Dec. 16, 2021) ....................10

*Dart Cherokee Basin Operating Co. v. Owens*
  574 U.S. 81 (2014)..................................................................................................................7

*In re Ford Motor Co./Citibank*
  264 F.3d 952 (9th Cir. 2011) ................................................................................................15

*Fritsch v. Swift Transportation Co. of Arizona, LLC*
  899 F.3d 785 (9th Cir. 2018) ................................................................................................14

*Gonzales v. CarMax Auto Superstores, LLC*
  840 F.3d 644 (9th Cir. 2016) .................................................................................................9

*Greene v. Harley-Davidson, Inc.*
  965 F.3d 767 (9th Cir. 2020) .................................................................................................9

*Harris v. KM Indus., Inc.*
  980 F.3d 694 (9th Cir. 2020) ..............................................................................................8, 9

*Henry v. Central Freight Lines, Inc.*
  692 Fed. Appx. 806 (9th Cir. 2017).......................................................................................9

*Ibarra v. Manheim Invs., Inc.*
  775 F.3d 1193 (9th Cir. 2015) ...............................................................................................8

*Jauregui v. Roadrunner Transp. Servs., Inc.*
  28 F.4th 989 (2022)...............................................................................................................10

*Korn v. Polo Ralph Lauren Corp.*
  536 F. Supp. 2d 1199 (E.D. Cal. 2008)..................................................................................8

*LaCross v. Knight Transp., Inc.*
    775 F.3d 1200 (9th Cir. 2015) ..........................................................................................9

*Mondragon v. Capital One Auto Finance*
    736 F.3d 880 (9th Cir. 2013) ............................................................................................7

*Pagel v. Dairy Farmers of Am., Inc.*
    986 F. Supp. 2d 1151 (C.D. Cal. 2013) .........................................................................15

*Rea v. Michaels Stores Inc.*
    742 F.3d 1234 (9th Cir. 2014) ..........................................................................................8

*Ritenour v. Carrington Mortg. Servs. LLC*
    228 F. Supp. 3d 1025 (C.D. Cal. 2017) .........................................................................13

*Rodriguez v. AT&T Mobility Servs. LLC*
    728 F.3d 975 (9th Cir. 2013) ............................................................................................8

*Romeo v. Home Depot U.S.A., Inc.*
    No. 06CV1505 IEG (BLM), 2006 WL 6814428 ............................................................8

*Salter v. Quality Carriers, Inc.*
    974 F.3d 959 (9th Cir. 2020) ............................................................................................9

*Singer v. State Farm Mut. Auto. Ins. Co.*
    116 F.3d 373 (9th Cir. 1997) ............................................................................................8

*Wicker v. ASC Profiles LLC*
    No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271 (E.D. Cal. Mar. 30, 2021) ...........12, 13, 14

**Federal Statutes**

Class Action Fairness Act of 2005 .................................................................................... *passim*

**California Statutes**

Cal. Bus. & Prof. Code
    § 17200 ............................................................................................................................6
    § 17208 ............................................................................................................................6

Cal. Labor Code
    § 201 ..............................................................................................................................12
    § 202 ..............................................................................................................................12
    § 204 ........................................................................................................................13, 14
    § 210 ..............................................................................................................................14
    § 218.5 ...........................................................................................................................14
    § 226(a) .........................................................................................................................13

§ 226.7..................................................................................................................................10, 11
§ 340(a) ......................................................................................................................................14
§ 1194 ..............................................................................................................................9, 10, 14
§ 2802 ........................................................................................................................................14

Unfair Competition Law ...............................................................................................................6

**Other Authorities**

Senate Judiciary Report, S. REP. 109-14 .......................................................................................7

1 Defendant Grace Holmes, Inc. ("Defendant") hereby responds to the Court's Order to
2 Show Cause (ECF No. 7) and says as follows:

## I.     INTRODUCTION

In this putative class action, Plaintiff Luis Madriz-Rivas ("Plaintiff") seeks to represent more than 1,200 of Defendant's non-exempt employees in California since August 30, 2020 on a variety of wage-hour claims. The evidence submitted herewith demonstrates that the amount in controversy in this action far exceeds the $5,000,000 threshold required for removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Indeed, as addressed more fully below, the amount in controversy in this case is **$8,755,650** using conservative assumptions – and **$6,916,998** using even more conservative assumptions. In either case, the amount in controversy far exceeds the $5,000,000 statutory threshold.

## II.    STATEMENT OF FACTS

### A.     Plaintiff's Complaint.

On August 30, 2024, Plaintiff filed his unverified Complaint against Defendant in Santa Clara County Superior Court, asserting various wage-hour claims. (ECF No. 1-1.)

In his Complaint, Plaintiff seeks to represent all other persons who have been employed by "Defendant in California as an hourly-paid or non-exempt employee during the statute of limitations period applicable to the claims pleaded here." (ECF No. 1-1, ¶ 2.)

Plaintiff alleges that these employees (1) were not paid minimum and straight time wages (Cause of Action 1); (2) were not paid overtime wages (Cause of Action 2); (3) were not provided meal periods (Cause of Action 3); (4) were not provided rest periods (Cause of Action 4); (5) were not timely paid final wages (Cause of Action 5); (6) were not provided accurate itemized wage statements (Cause of Action 6); (7) were not indemnified for business expenditures (Cause of Action 7); (8) were not provided requested employment records (Cause of Action 8); and (9) were subjected to unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Cause of Action 9).[1] (ECF No. 1-1.)

---

[1] There is a four-year statute of limitations for Unfair Competition Law claims. Business and Prof. Code § 17208.

**B.     Evidence.**

Defendant provided voluminous data from its various computer systems to Resolution Economics LLC ("Resolution Economics") so that Resolution Economics could review the data and determine the amount in controversy in this action. (LaMana Decl., ¶¶ 2-6.)

The data showed that Defendant has employed more than 1,200 non-exempt employees in California since August 30, 2020, and that those persons worked more than 28,000 pay periods. (Eng Decl., ¶ 3.)

The data also established that those employees worked 86,339 shifts in which they were eligible for meal periods under California law (*i.e.*, more than 5 hours) and 146,240 shifts in which they were eligible for rest periods under California law (*i.e.*, more than 3.5 hours). (Eng Decl., ¶ 5.)

The data also showed that, for the time period of August 30, 2023 to October 5, 2024, there were 459 employees with a total of 5,937 pay periods.  (Eng Decl., ¶ 8.)

Finally, the data showed that the employment of 816 of the putative class members ended on or after August 30, 2021. (Eng Decl., ¶ 11.)

### III.    ARGUMENT

#### A.    In *Dart Cherokee*, the Supreme Court Confirmed That There is No Presumption Against CAFA Removal.

"CAFA gives federal courts jurisdiction over certain class actions . . . if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014). In this way, CAFA substantially expanded federal jurisdiction over class actions. *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 882 (9th Cir. 2013).

In *Dart Cherokee*, the Supreme Court confirmed that "***no antiremoval presumption attends cases invoking CAFA***, which Congress enacted to facilitate adjudication of certain class actions in federal court." 574 U.S. at 89 (emphasis added, citation omitted).

The Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubt regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. *See* Senate Judiciary Report, S. REP. 109-14, at 42 ("If a federal court is uncertain about whether

'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, *the court should err in favor of exercising jurisdiction over the case*."); *id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."); *accord Romeo v. Home Depot U.S.A., Inc.*, No. 06CV1505 IEG (BLM), 2006 WL 6814428, at *1 (S.D. Cal. Oct. 30, 2006) (confirming that "where the court is in doubt whether the aggregated claims exceed $5 million, 'the court should err in favor of exercising jurisdiction over the case.'"); *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

    **B.**    **A "Preponderance of Evidence" Standard Applies To The Amount In Controversy.**

The proper burden of proof for the amount in controversy is the preponderance of evidence standard. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013). The parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *accord Ibarra*, 775 F.3d at 1197.

The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). Nor is the preponderance of evidence a significant burden to satisfy. ***Defendant need only present evidence showing "the potential damages could exceed the jurisdictional amount." Rea v. Michaels Stores Inc.***, 742 F.3d 1234, 1239 (9th Cir. 2014) (emphasis added). Importantly, Defendant is not obligated to "research, state and prove the plaintiff's damages" under this standard. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–1205 (E.D. Cal. 2008).

C. **In Accordance With Ninth Circuit Precedent, Defendant's Conservative Calculations Of The Amount In Controversy Are Reasonable In Light Of Plaintiff's Allegations.**

To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5,000,000. As the Ninth Circuit has noted, the amount in controversy is the "amount at stake in the underlying litigation." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quotation marks and citations omitted). "Amount at stake" does not mean likely or probable liability; rather, it refers to possible liability. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). When evaluating the amount in controversy, "the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 Fed. Appx. 806, 807 (9th Cir. 2017) (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 648 (9th Cir. 2012)).

A removal under CAFA may rely on "a chain of reasoning" that is based on "reasonable assumptions." *LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). Courts "weigh the reasonableness of the removing party's assumptions" and should "not supply further assumptions of [their] own." *Harris*, 980 F.3d at 701. Specifically, in calculating the amount in controversy, an "assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1198); *accord Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements."). That foundation exists here, as the assumed violation rates are rooted in Plaintiff's broad allegations of liability across the putative class.

1. **Minimum Wage.**

In support of his minimum wage claim, Plaintiff alleges that Defendant, ". . . at times, knowingly failed to pay to Plaintiff and some of, but not necessarily all of, the Class compensation for all hours they worked. By their failure to pay compensation for each hour worked as alleged above, Defendants willfully violated the provisions of California Labor Code § 1194, and any

additional applicable Wage Orders, which require such compensation to non-exempt employees." (ECF No. 1-1, ¶ 3.)

Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not paid for at least one hour of overtime per week from February 22, 2021 through the present. *Cabrera v. South Valley Almond Company, LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (finding an assumption of one hour of one hour of unpaid minimum wages per week to be consistent with "at times" and "on occasion" allegations based on "policies and/or practices").

The amount of allegedly unpaid minimum wages is doubled because Plaintiff seeks to recover liquidated damages under Labor Code section 1194.2. ECF No. 1-1, ¶ 39; *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 995 n.7 (2022) (permitting liquidated damages for minimum wage claim under CAFA removal).

Assuming employees who worked shifts of more than 3.5 hours (146,240 shifts) each worked only 5 minutes off-the-clock each shift, the amount in controversy for the minimum wage claim is **$248,608**, using each employee's base hourly rate. (Eng Decl., ¶ 7.) The liquidated damages Plaintiff seeks would be an additional **$248,608**. (*Id*.)

### 2. Overtime.

Because employees typically worked shifts lasting fewer than 8 hours, no amount for overtime is included in this analysis.

### 3. Meal Periods.

Plaintiff alleges in support of his meal period claim that Defendant, ". . . at times, failed to provide Plaintiff and some, but not necessarily all of the Class with both meal periods and required by California law. By their failure to permit and authorize Plaintiff and some, but not necessarily all of the Class to take all meal periods as alleged above (or due to the fact that Defendants, at times, made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders." (ECF No. 1-1, ¶ 53.)

Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not provided a compliant meal period 33% of the time. *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151–52 (S.D. Cal. 2018) (finding a 60% violation rate assumption to be reasonable where complaint alleged "policy and practice" of meal period violations).

With 86,339 meal-eligible shifts and an assumed violation rate of 33%, the amount in controversy on the meal period claim alone is **$647,116** using each employee's base hourly rate. Using an even more conservative assumed violation rate of 10%, the amount in controversy for the meal period claims is **$194,135**. (Eng Decl., ¶ ¶ 5, 6.)

### 4.     Rest Periods.

Plaintiff alleges in support of his rest period claim that "Defendant ". . . at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks, regardless of whether employees worked more than four hours in a workday. By their failure to permit and authorize Plaintiff and some of, but not necessarily all of the Class to take rest periods as alleged above (or due to the fact that Defendants, at times, made it impossible or impracticable to take these uninterrupted rest periods), Defendants willfully violated the provisions of California Labor Code § 226.7 and the applicable Wage Orders." (ECF No. 1-1, ¶ 57.)

Based on these allegations, it is reasonable to assume, for purposes of removal only, that putative class members were not provided a compliant rest period 33% of the time. *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding a 60% violation rate assumption to be reasonable where complaint is indeterminate with respect to violation rates); *see also Bryant* , 284 F. Supp. 3d at 1151–52 (finding a 60% violation rate assumption to be reasonable where complaint alleged "policy and practice" of meal period violations).

With 146,240 rest-eligible shifts and an assumed violation rate of 33%, the amount in controversy on the rest period claim alone is **$994,430** using each employee's base hourly rate. Using an even more conservative assumed violation rate of 10%, the amount in controversy for the meal period claims is **$298,329**. (Eng Decl., ¶ ¶ 5, 6.)

### 5. Business Expenses.

Plaintiff alleges vaguely that he and other employes were not reimbursed for business expenses. (ECF No. 1-1, ¶¶ 74-78.)

Assuming employees were not reimbursed for $20 each pay period, the amount in controversy for that claim is **$643,680**. (Eng Decl., ¶ 8.) Assuming only $10 per pay period, the total potential estimated exposure for unreimbursed business expenses is **$321,840**. (*Id*.)

### 6. Waiting Time Penalties For Untimely Payment Of Wages At Employment End.

Plaintiff alleges that Defendant, ". . . at times, failed, and continue to fail, to pay some of, but not necessarily all of, the terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." (ECF No. 1-1, ¶ 61.)

Because Plaintiff's claim for waiting time penalties is derivative of his claims for failing to pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, it is reasonable to assume a 100% violation rate for his section 203 claim for all terminated employees. That is, "because it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence." *Wicker v. ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021).

During the relevant time period, there were 816 employees who were terminated on or after August 30, 2021. Assuming that each of those employees had even one underlying violation that would result in an underpayment triggering waiting time penalties, the amount in controversy on this claim is **$2,509,829**. (Eng Decl., ¶ 11.)[2]

---

[2] The calculation for potential waiting time penalties for each termination occurring on or after August 30, 2021 is as follows: 30 days × the employees' last hourly base rate × average daily hours worked. (*Id*.)

12
DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION
FIRM:66076127v1

### 7. **<u>Wage Statement Penalties.</u>**

Plaintiff alleges that Defendant, ". . . at times, intentionally and willfully failed to provide employees with complete and accurate wage statements. The deficiencies include, among other things, the failure to correctly identify the gross wages earned by Plaintiff and some of the Class, the failure to list the true "total hours worked by the employee," and the failure to list the true net wages earned. Plaintiff does not allege that all of the Class Members were so harmed." (ECF No. 1-1, ¶ 68.)

Because Plaintiff's wage statement claim is derivative of his claims for failing to timely pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, as well as accurately report all hours worked, it is reasonable to assume a 100% violation rate for his section 226(a) claim. "Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendant[] to assume a 100% violation rate" in valuing wage statement claims. *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017); *accord Wicker*, 2021 WL 1187271, at *4. ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

The remedy for an alleged violation of Labor Code section 226(a) is found in section 226(e)(1):

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

During the time period from August 30, 2023 to October 5, 2024, there were 459 employees with a total of 5,937 pay periods. (Eng Decl., ¶ 8.) Thus, the amount in controversy on this claim alone, assuming a 100% violation rate, is **$570,750**. (*Id*.)

### 8. **Penalties for Untimely Payment of Wages During Employment.**

In his First and Second Causes of Action, Plaintiff alleges that Defendant did not timely pay wages to employees, in violation of California Labor Code section 204. (ECF No. 1-1, ¶¶ 40, 50.)

The remedy for an alleged violation of Labor Code section 204 is found in section 210(a):

> 1. For any initial violation, one hundred dollars ($100) for each failure to pay each employee.
>
> 2. For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Plaintiff's allegations about Defendant's refusal to timely pay wages reflects that Plaintiff seeks the heightened penalty. (ECF No. 1-1, ¶¶ 40, 50.)

Because the remedy found in Labor Code section 210 is a penalty, there is a one-year statute of limitations. Lab. Code § 340(a). Because Plaintiff's section 204 claim is derivative of his claims for failing to timely pay all overtime, minimum wages, meal period premiums and rest period premiums he contends were due, it is reasonable to assume a 100% violation rate for his section 204 claim. *Wicker*, 2021 WL 1187271, at *4 ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

There were 459 employees with a total of 5,937 pay periods during the one-year limitations period. Thus, the total potential exposure due to penalties for late payment of wages is **$1,141,500**. (Eng Decl., ¶ 10.)

### 9. **Attorneys' Fees.**

Based on his claims, Plaintiff seeks to recover attorneys' fees. (ECF No. 1-1, ¶¶ 41, 49, 65, 73, 78, 86, Prayer for Relief.) In *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit reversed the district court's remand order under CAFA because the district court erred by failing to include future attorneys' fees recoverable by statute or contract when determining whether the amount in controversy was met. 899 F.3d at 788.

Because the *Fritsch* plaintiff had demanded attorneys' fees for alleged Labor Code violations under sections 218.5, 226 and 1194, the Ninth Circuit held that, "Because the law entitles *Fritsch* to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy." *Id.* at 794. Like the plaintiff in *Fritsch*, Plaintiff here demands attorneys' fees pursuant to, *inter alia*, Labor Code sections 218.5, 1194, and 2802. (ECF No. 1-1, ¶¶ 65, 73, 78, 86, 87, 104.) Accordingly, attorneys' fees are included in the amount in controversy here.

Assuming attorneys' fees of 25% (the Ninth Circuit's benchmark)[3] of the alleged damages, restitution, and penalties sought using conservative assumptions (33% violation rates for meal and rest periods, $20 per pay period for unreimbursed expenses, the amount in controversy on Plaintiff's attorneys' fees would be **$1,751,130**. (Eng Decl., ¶ 12.) Using even more conservative assumptions (10% violation rates for meal and rest periods, $10 per pay period for unreimbursed expenses), the amount in controversy on Plaintiff's attorneys' fees would be **$1,383,400**. (Eng Decl., ¶ 13.)

### 10. Business Records And Injunctive Relief.

Plaintiff has also brought a claim for failure to produce business records. (ECF No. 1-1, ¶¶ 79-92.) And Plaintiff also seeks injunctive relief. (ECF No. 1-1, ¶¶ 30, 73, 86, 87, 101.) While it is impossible to quantify the costs of compliance with any such injunction, any potential changed practice would increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes).

---

[3] The Ninth Circuit's established benchmark of 25% of damages for an award of attorneys' fees in class actions provides a reasonable basis to determine the amount of attorneys' fees that may be recovered in this case. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Rwomwijhu v. SMX, LLC*, No. CV 16-08105-AB (PJWx), 2017 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (adding 25% in attorneys' fees in determining the amount in controversy for CAFA jurisdiction).

Factoring in this additional relief that Plaintiff seeks, the amount in controversy would even further exceed the $5,000,000 statutory threshold.

## IV. TOTAL AMOUNT IN CONTROVERSY

Exclusive of any amount for Plaintiff's claims for unpaid overtime, records request violations, interest, costs, and injunctive relief, the total amount in controversy far exceeds the jurisdictional requirement of $5,000,000 using conservative assumptions (33% violation rates for meal and rest periods, $20 per pay period for unpaid expenses):

| | |
|---|---:|
| Meal Break Penalties (33% of meal breaks) | $647,116 |
| Rest Break Penalties (33% of rest breaks) | $994,430 |
| Unpaid "Off-the-Clock" Work | $248,608 |
| Liquidated Damages for Unpaid "Off-the-Clock" Work | $248,608 |
| Unreimbursed Expenses ($20 per pay period) | $643,680 |
| Wage Statement §226 Penalties | $570,750 |
| Late Payment of Wages §204 Penalties | $1,141,500 |
| Waiting Time §203 Penalties | $2,509,829 |
| Attorney's Fees | $1,751,130 |
| **Total Amount in Controversy** | **$8,755,650** |

(Eng Decl., ¶ 12.) This total does not include any amounts for Plaintiff's overtime or business records claims, or his requests for interest, costs, or injunctive relief. Nor does this total include any post-removal amounts (other than attorneys' fees). Of course, calculating those claims would push the amount in controversy further above the $5,000,000 threshold.

Critically, even using more conservative assumptions (10% violation rates for meal and rest periods, $10 per pay period for unpaid expenses), the amount in controversy still far exceeds $5,000,000:

| | |
|---|---:|
| Meal Break Penalties (10% of meal breaks) | $194,135 |
| Rest Break Penalties (10% of rest breaks) | $298,329 |
| Unpaid "Off-the-Clock" Work | $248,608 |
| Liquidated Damages for Unpaid "Off-the-Clock" Work | $248,608 |
| Unreimbursed Expenses ($10 per pay period) | $321,840 |
| Wage Statement §226 Penalties | $570,750 |
| Late Payment of Wages §204 Penalties | $1,141,500 |
| Waiting Time §203 Penalties | $2,509,829 |
| Attorney's Fees | $1,383,400 |
| **Total Amount in Controversy** | **$6,916,998** |

(Eng Decl., ¶ 13.)

## V.     CONCLUSION

For the foregoing reasons, Defendant has established by more than a "preponderance of evidence" that the amount in controversy in this action exceeds the $5,000,000 statutory authority.

DATED: October 24, 2024                    EPSTEIN BECKER & GREEN, P.C.

                                        By:  /s/ Michael S. Kun
                                             Michael S. Kun

                                             Attorneys for Defendant
                                             GRACE HOLMES, INC.

FIRM:66076127v1