Michael S. Kun (SBN 208684)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone: (310) 556-8861
Facsimile:  (310)-553-2165
mkun@ebglaw.com

Attorneys for Defendant
GRACE HOLMES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MADRIZ-RIVAS, individually, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>GRACE HOLMES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No.: 5:24-cv-07061-PCP<br><br>*Assigned to Hon. P. Casey Pitts, Crtrm. 8*<br><br>**DECLARATION OF STEPHEN ENG IN SUPPORT OF DEFENDANT GRACE HOLMES, INC.'S RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION** |

## DECLARATION OF STEPHEN ENG

I, Stephen Eng, hereby declare and say as follows:

1.　　I have personal knowledge of the facts and matters set forth herein, and, if called as a witness, I could and would testify competently thereto except as to matters based on information and belief as to which I have a reasonable belief to be true.

### ASSIGNMENT

2.　　I have been retained by Counsel for Defendant, Grace Holmes, Inc. ("Grace Holmes") to review available data to estimate potential economic exposure related to Plaintiffs' claims that these employees were deprived of meal and/or rest periods without compensation,

- 1 -

among other claims.  Specifically, I have been asked to estimate the number of meal and rest break-eligible shifts, as well as estimating potential economic exposure related to Plaintiffs' claims of uncompensated "off-the-clock" work and unreimbursed business expenses.  I have also been asked to estimate potential economic exposure related to Plaintiffs' wage statement violation claims that are brought under California Labor Code section 226, late payment of wages claims under California Labor Code section 204, and waiting time penalties under California Labor Code section 203 for terminated employees who Plaintiffs may claim have unpaid wages at the time of termination.

## QUALIFICATIONS

3.      I am a Director at Resolution Economics LLC, a consulting firm whose activities include performing economic and statistical analyses in connection with litigation matters.  At Resolution Economics, I have provided consulting services in more than 100 class-action matters alleging wage and hour violations under FLSA and other state laws.  In connection with this work, I have processed and analyzed complex databases, including human resources data, timekeeping records, and payroll data related to class certification, merits and damages.  I hold an M.S. in Business Analytics from the Tepper School of Business at Carnegie Mellon University and a B.S. in Statistics and B.A. in Economics from the University of California, Los Angeles.  My resume is attached to this report as Attachment A.  My hourly rate for services rendered is $650, which is the rate I customarily charge for both consulting work and expert testimony.

## ESTIMATED POTENTIAL ECONOMIC EXPOSURE

4.      In connection with this assignment, I was provided with payroll data for Grace Holmes employees and a list of California store locations.  After limiting the payroll to only California-based hourly non-exempt employees during the putative class period, the data contains records for 1,274 employees and 28,960 pay periods from August 30, 2020 to October 5, 2024, which includes their store location, hours paid and earnings amounts under various pay codes.

5.      I was also provided with employee timekeeping data for California-based hourly paid and non-exempt employees who worked for Grace Holmes during the putative class period. The timekeeping data contains records for 1,336 employees and 32,184 pay periods from August

- 2 -

30, 2020 through October 12, 2024, and among other things, contains their employee ID, hire date, termination date, job title, and time punches.

6.      In order to calculate potential exposure due to meal and/or rest periods, first the number of meal and rest break-eligible shifts must be identified.  From the timekeeping data that was provided, I identified the number of meal-break eligible shifts (i.e., shifts greater than 5 hours in duration) and rest-break eligible shifts (i.e., shifts greater than 3.5 hours in duration) that each employee worked.   In total, for the 1,336 employees for whom timekeeping records were available, a total of 86,339 meal-eligible and 146,240 rest-eligible shifts were identified.

7.      Assuming that a third of the meal breaks were non-compliant, the total potential estimated exposure for any meal break violations is $647,116.[1]  Assuming that a third of the rest breaks were non-compliant, the potential estimated exposure for any rest break violations is $994,430.[2]  If only 10% of the meal breaks and 10% of the rest breaks are assumed to have been non-compliant, the potential estimated exposure is $194,135 and $298,329, respectively.

8.      It is my understanding that Plaintiffs claim that Grace Holmes failed to pay putative class members for all hours they worked under California Labor Code Section 1194.  More specifically, Plaintiffs claim "the Class worked through meal periods "off-the-clock," and continued to work after they had clocked out for the workday".[3]  Assuming only 5 minutes of "off-the-clock" work on each shift greater than 3.5 hours in duration, the potential estimated exposure for a failure to pay for all time worked is $248,608.[4]  Further, it is my understanding that California Labor Code Section 1194.2 entitles aggrieved employees "to recover liquidated

---

[1] This is the equivalent of one hour of pay per potential violation at the employee's base hourly rate in payroll for the corresponding pay period.  An average base rate of $20.10 was used for employees who did not have payroll data.  For purposes of this declaration, I have not estimated any potential interest owed.
[2] This is the equivalent of one hour of pay per potential violation at the employee's base hourly rate in payroll for the corresponding pay period.  An average base rate of $20.10 was used for employees who did not have payroll data.  For purposes of this declaration, I have not estimated any potential interest owed.
[3] Plaintiffs' Class Action Complaint, page 5.
[4] This is calculated at the employee's base hourly rate.  For purposes of this declaration, I have not estimated any potential interest owed.

- 3 -

DECLARATION OF STEPHEN ENG IN SUPPORT OF DEFENDANT'S
RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION

damages in an amount equal to the wages unlawfully unpaid".[5]  The potential estimated liquidated damages using the same assumption as above is $248,608.

9.      Plaintiffs claim that Grace Holmes violated California Labor Code Section 2802 by failing to reimburse class members for all necessary expenses.  Assuming plaintiffs incurred $20 of unreimbursed business expenses per pay period, the total potential estimated exposure is $643,680.    Assuming only $10 per pay period, the total potential estimated exposure for unreimbursed business expenses is $321,840.

10.     It is my understanding that California Labor Code Section 226 requires a written, accurate itemized wage statement.  The labor code states that an aggrieved employee "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)".[6]  Based on my understanding, the potential wage statement penalty exposure is limited to pay periods within one year of the Complaint filing date.[7]    Given that there are a number of causes of action in the Complaint that could potentially trigger a wage statement penalty, including claims of meal and rest break violations, unpaid "off-the-clock" work, and overtime pay, I assume that any pay period from August 30, 2023 to present would potentially trigger a penalty payment.  During the time period from August 30, 2023 to October 5, 2024, there are 459 employees in the payroll data with a total of 5,937 pay periods.  The total potential exposure due to wage statement violation penalty payments is $570,750.

11.     It is my understanding that California Labor Code Section 204 requires all wages earned are due and payable twice a month and that violations are subject to penalty amounts as

---

[5] State of California Department of Labor Standards Enforcement Labor Code.
[6] State of California Department of Labor Standards Enforcement Labor Code. It is my understanding that Plaintiffs will likely argue that each pay period after an employee's first pay period during the relevant period qualifies as a "subsequent violation."  This is the methodology under which the exposure was estimated.
[7] I understand that Grace Holmes hourly paid, non-exempt employees were paid bi-weekly starting from pay period ending 9/25/2021. Prior to that pay period, hourly, non-exempt employees were paid on a weekly basis.

- 4 -

described in Labor Code Section 210 which states "for any initial violation, one hundred dollars ($100) for each failure to pay each employee.  For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld".[8]  It is also my understanding that the potential penalty exposure is limited to pay periods within one year of the Complaint filing date.  Given that there are a number of causes of action in the Complaint that could potentially trigger a late payment of wages penalty, including claims of meal and rest break violations, unpaid "off-the-clock" work, and overtime pay, I assume that any pay period from August 30, 2023 to present would potentially trigger a penalty payment.  Within that time period, there are 459 employees in the payroll data with a total of 5,937 pay periods.  Excluding the 25% recovery of withheld wages, the total potential exposure due to penalties for late payment of wages is $1,141,500.

12.    It is my understanding that California Labor Code Section 201-203 requires that wages earned and unpaid at the time of discharge are due and payable immediately.  The penalty for violation of this labor code states under Section 203 that "an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until and action therefor is commenced; but the wages shall not continue for more than 30 days."[9]  Based on my understanding, the potential waiting time penalty exposure is limited to terminations that occurred within three years of the Complaint filing date.  Given that there are a number of causes of action in the Complaint that could potentially trigger a waiting time penalty, I assume that each terminated employee would have at least one instance that would trigger the waiting time penalty.  In this case, that includes the 816 terminations on or after August 30, 2021.  The total estimated potential exposure due to waiting time penalties is $2,509,829.[10]

---

[8] State of California Department of Labor Standards Enforcement Labor Code.  It is my understanding that Plaintiffs will likely argue that each pay period after an employee's first pay period during the relevant period qualifies as a "subsequent violation."  This is the methodology under which the exposure was estimated.

[9] State of California Department of Labor Standards Enforcement Labor Code.

[10] The calculation for potential waiting time penalties for each termination occurring on or after August  30, 2021 is as follows: 30 days × the employees' last hourly base rate × average daily hours worked.

DECLARATION OF STEPHEN ENG IN SUPPORT OF DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION

FIRM:66073341v1

13.     As shown in the Table 1 below, potential estimated exposure assuming one-third of meal breaks with violation, one-third of rest breaks with violations, 5 minutes of unpaid work time per shift, unreimbursed expenses of $20 per pay period, and the associated wage statement (§226), late payment of wages (§204) penalties, and waiting time (§203) penalties is $7,004,520. Estimated attorney's fees, assumed as 25% of the potential exposure amount, are $1,751,130. Including attorney's fees, the total potential estimated exposure becomes $8,755,650.   This estimate does not include applicable interest on the meal or rest period penalty payments, wages for "off-the-clock" work, or unreimbursed expenses.

**Table 1: Summary of Estimated Potential Exposure**

| | |
|---|---|
| Meal Break Penalties (33% of meal breaks) | $647,116 |
| Rest Break Penalties (33% of rest breaks) | $994,430 |
| Unpaid "Off-the-Clock" Work | $248,608 |
| Liquidated Damages for Unpaid "Off-the-Clock" Work | $248,608 |
| Unreimbursed Expenses ($20 per pay period) | $643,680 |
| Wage Statement §226 Penalties | $570,750 |
| Late Payment of Wages §204 Penalties | $1,141,500 |
| Waiting Time §203 Penalties | $2,509,829 |
| Attorney's Fees | $1,751,130 |
| **Total Potential Estimated Exposure** | **$8,755,650** |

14.     Table 2 provides the potential estimated exposure assuming only 10% of meal breaks with violation, only 10% of rest breaks with violations, 5 minutes of unpaid work time per shift, unreimbursed expenses of $10 per pay period, and the associated wage statement (§226), timely payment of wages (§204) penalties, and waiting time (§203) penalties.   Using these

- 6 -

FIRM:66073341v1

reduced assumptions, the potential estimated exposure is $5,533,598, and estimated attorney's fees assumed at 25% are $1,383,400.  The total potential estimated exposure is $6,916,998.

**Table 2: Summary of Estimated Potential Exposure**

| | |
|---|---|
| Meal Break Penalties (10% of meal breaks) | $194,135 |
| Rest Break Penalties (10% of rest breaks) | $298,329 |
| Unpaid "Off-the-Clock" Work | $248,608 |
| Liquidated Damages for Unpaid "Off-the-Clock" Work | $248,608 |
| Unreimbursed Expenses ($10 per pay period) | $321,840 |
| Wage Statement §226 Penalties | $570,750 |
| Late Payment of Wages §204 Penalties | $1,141,500 |
| Waiting Time §203 Penalties | $2,509,829 |
| Attorney's Fees | $1,383,400 |
| **Total Potential Estimated Exposure** | **$6,916,998** |

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 23rd day of October, 2024 at Los Angeles, California.

Stephen Eng, M.S.

DECLARATION OF STEPHEN ENG IN SUPPORT OF DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE RE: CAFA JURISDICTION

FIRM:66073341v1

**ATTACHMENT A**



1925 Century Park East 15th Floor
Los Angeles, CA 90067
Office.310.275.9137
Fax.310.275.9086
SEng@resecon.com

# STEPHEN ENG, DIRECTOR

Stephen Eng is a Director at Resolution Economics LLC, an economics, statistics, and forensic accounting consulting firm with offices in Los Angeles, Chicago, North Carolina, Washington, D.C. and New York. He holds an M.S. in Business Analytics from Carnegie Mellon University and a B.S. in Statistics and a B.A. in Economics from the University of California, Los Angeles.

Mr. Eng has experience in a wide range of litigation support for single plaintiff and class action matters involving wrongful termination, meal and rest break compliance, off-the-clock work, regular rate of pay, misclassification, and other wage-and-hour claims. He specializes in interpreting complex databases, and preparing detailed analyses and damages models to assist clients both at mediation and at trial. Mr. Eng has also been involved in the design and implementation of large scale, nationwide surveys and observation studies in both litigation and consulting contexts. In single plaintiff matters, Mr. Eng specializes in the analysis of lost wages, including evaluating job search efforts and mitigation opportunities.

## Professional Experience

Assignments representative of Mr. Eng's experience include the following:

- Provided consulting services to defense counsel in a class-action case alleging various wage-and-hour-related violations, including missed meals, missed rest breaks, and overtime rate of pay calculations for flight attendants. Services included processing and analyzing payroll and flight data, and estimating exposure for mediation purposes.

- Provided consulting services to defense counsel in a large, class-action matter alleging various wage and hour violations, including missed meal breaks, missed rest breaks, and at a nationwide hospital system. Services included assisting in the design, implementation, and management of an observation study at a sample of locations to capture the tasks performed by employees, and performing statistical analysis of observation study data. Services also included reviewing and analyzing timekeeping, payroll, door access data, and other operational workflow data.

- Provided consulting services to defense counsel in a large, class-action matter alleging misclassification of assistant managers for a regional supermarket chain. Services included assisting in the design, implementation, and management of an observation study and survey across multiple states to capture the tasks performed by employees, and performing statistical analysis of observation study data related to establishing liability.

- Provided consulting services to defense counsel for a senior-care provider in connection with a class-action case alleging understaffing. Services included reviewing and commenting on opposing expert analysis, conducting a time-and-motion study to capture time spent on various activities, and analyzing timekeeping and resident assessment data.



- Provided consulting services to defense counsel in a large, class-action matter alleging misclassification of financial advisors for a national wealth management firm. Services included assisting in the design, implementation, and management of an observation study and survey across multiple states to capture the tasks performed by employees, and performing statistical analysis of observation study data and survey data related to establishing liability.

- Provided consulting services to defense counsel for an online retailer in connection with an internal compliance audit of pre and post-shift activities at their distribution warehouse. Services included conducting a large-scale video observation study to assess the extent of potential wait times related to bag checks.

- Provided consulting services to defense counsel for a large pharmacy chain in a class-action case alleging various wage-and-hour related violations, including missed meals and missed rest breaks for pharmacists. Services included examining case-related documents, and processing timekeeping data to assess extent of break-related coverage.

- Provided consulting services to defense counsel in a large, class-action matter alleging misclassification of employees at a nationwide chain of fitness clubs. Services included assisting in the design, implementation, and management of a video observation study at a sample of locations to capture the tasks performed by employees pre and post-shift, and performing statistical analysis of observation study data.

- Provided consulting services to defense counsel for a casino in a class-action case alleging various wage-and-hour related violations, including missed meals, and missed rest breaks. Services included examining case-related documents and processing timekeeping, payroll, and proprietary casino management data to assess extent of issues and to estimate exposure.

- Provided consulting services to defense counsel in a class-action case alleging various wage-and-hour-related violations, including missed meals, missed rest breaks, and overtime rate of pay calculations at an airline manufacturing facility. Services included processing and analyzing payroll and timekeeping data, and estimating exposure for mediation purposes.

- Provided consulting services to defense counsel in a large class-action matter alleging various wage-and-hour-related violations, including missed meals, missed rest breaks, potential off-the-clock due to security check wait times at a large amusement park. Services included reviewing and analyzing timekeeping and gate access data, designing and implementing a video observation study to capture the entry process and performing a statistical analysis of results.

- Provided consulting services to defense counsel in a large, class-action matter alleging misclassification of commissioned employees. Services included reviewing and analyzing timekeeping and payroll data, and estimating exposure for mediation purposes.

- Provided consulting services to defense counsel in a large class-action matter alleging wait times due to security checks at a national logistics and transportation company. Services included reviewing and analyzing timekeeping data, designing and implementing a video observation study to capture the entry and exit process at several of the company's locations, and performing a statistical analysis of results.



- Provided consulting services to defense counsel in a large class-action case alleging various wage-and-hour-related violations, including missed meals, missed rest breaks, and overtime rate of pay calculations at a restaurant chain. Services included processing and analyzing payroll, timekeeping, and estimating exposure for mediation purposes.

- Provided consulting services to defense counsel in a single plaintiff wrongful termination matter for a city employee. Services included reviewing various documents and data, analyzing labor market data to create reasonable mitigation scenarios, and creating estimates of damages under each scenario.

- Provided consulting services to defense counsel in a single plaintiff wrongful termination matter of a legal professional for an insurance company. Services included reviewing various documents and data, analyzing labor market data to create reasonable mitigation scenarios, and creating estimates of damages under each scenario.

- Provided consulting services to defense counsel in a large class action matter alleging meal and rest violations at a large trucking firm. Services included analysis of timekeeping, payroll, DOT transportation logs, and GPS data in connection with assessing the extent of potential break activity.

- Provided consulting services to defense counsel in a single plaintiff wrongful termination matter of a health professional. Services included reviewing various documents and data, analyzing labor market data to create reasonable mitigation scenarios, and creating estimates of damages under each scenario.

## Education

**Carnegie Mellon University, Tepper School of Business**
M.S., Business Analytics

**University of California, Los Angeles**
B.S., Statistics
B.A., Economics

## Employment History

**Resolution Economics LLC**
      2016 – Present: Director, Senior Manager, Manager, Senior Consultant, Consultant, Analyst