UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MADRIZ-RIVAS,<br><br>       Plaintiff,<br><br>v.<br><br>GRACE HOLMES, INC.,<br><br>       Defendant. | Case No. 5:24-cv-07061-PCP<br><br>**ORDER REMANDING CASE TO STATE COURT** |

Plaintiff Luis Madriz-Rivas, a former employee of defendant Grace Holmes, Inc., filed this putative state-law wage and hour class action in Santa Clara County Superior Court. Grace Holmes subsequently removed the case to federal court, asserting that this Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). Magistrate Judge Cousins ordered Grace Holmes to show cause establishing that CAFA's jurisdictional requirements are satisfied. For the following reasons, Grace Holmes has not met its burden of establishing this Court's subject matter jurisdiction. The Court therefore remands this action to Santa Clara County Superior Court.

## BACKGROUND

Madriz-Rivas, a former employee of Grace Holmes, filed this putative wage and hour class action on behalf of more than 1,200 employees. He asserts nine causes of action: (1) failure to pay minimum and straight-time wages in violation of California Labor Code § 1194 and applicable Industrial Welfare Commission (IWC) Wage Orders; (2) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194, 1198; (3) failure to provide meal periods in violation of California Labor Code §§ 512, 226.7, and section 11 of the applicable Wage Order; (4) failure to provide rest periods in violation of California Labor Code §§ 226.7, 512 and the applicable Wage Orders; (5) failure to pay wages at termination in violation of California Labor

1  Code §§ 201, 202, 203; (6) failure to issue accurate and itemized wage statements in violation of

2  226(a); (7) failure to pay and indemnify employees for expenditures in violation of California

3  Labor Code §2802; (8) failure to produce employment records in violation of California Labor

4  Code §§ 226, 1198.5; and (9) violation of California's Unfair Competition Law (UCL), Cal. Bus.

5  & Profs. Code § 17200 et seq.

6  Madriz-Rivas filed his complaint in Santa Clara County Superior Court. Grace Holmes

7  then removed the case to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453. In its

8  notice of removal, Grace Holmes alleged that removal was proper under CAFA because the case

9  has more than 100 putative class members, the amount in controversy exceeds $5,000,000, and

10 Madriz-Rivas is a citizen of California while Grace Holmes is a citizen of Delaware and New

11 York.

12 On October 10, 2024, Magistrate Judge Cousins ordered Grace Holmes to show cause

13 establishing that this case meets CAFA's jurisdictional requirements. Both parties filed responses.

**LEGAL STANDARDS**

A defendant may remove a case from state court to federal court only if the federal court would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

CAFA gives federal courts jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

The removing party bears the burden of establishing that CAFA's jurisdictional requirements have been met. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683–685 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). The removing party must file a notice of removal containing a short and plain statement of the grounds

for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

In determining the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. If the complaint does not state the amount in controversy, the defendant's notice of removal may do so. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). If the amount in controversy alleged by the defendant is contested by the plaintiff or questioned by the court, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 82, 88. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997)). "Mere speculation and conjecture" are not sufficient to establish CAFA jurisdiction. *Ibarra*, 775 F.3d at 1197.

## ANALYSIS

To determine if removal was proper, the Court must assess whether this case meets CAFA's threshold requirements. Because Madriz-Rivas is a citizen of California and Grace Holmes is a citizen of Delaware and New York, CAFA's "minimal diversity" requirement is met. The proposed class consists of Grace Holmes's California-based hourly or non-exempt employees during the four years before the filing of the complaint. Because that class includes more than 1,200 employees, according to Grace Holmes's records, CAFA's class size requirement is met. The parties disagree, however, as to whether the final requirement for CAFA jurisdiction—that the amount in controversy exceed $5,000,000—is satisfied.

Madriz-Rivas's complaint does not specify an amount in controversy. Grace Holmes's notice of removal alleges only that the amount in controversy requirement is met. In response to Magistrate Judge Cousins's order to show cause establishing that CAFA's jurisdictional requirements are met, Grace Holmes submitted a declaration from Stephen Eng, a consultant who analyzed Grace Holmes's employment and payroll data to calculate the amount in controversy.

1   Based on payroll records for 1,274 employees and timekeeping records for 1,336 employees over
2   the relevant period, Grace Holmes estimates the total amount in controversy as $8,755,650:
3   $647,116 for meal break penalties, $994,430 for rest break penalties, $248,608 for unpaid off-the-
4   clock work, $248,608 for liquidated damages for unpaid off-the-clock work, $643,680 for
5   unreimbursed expenses, $570,750 for wage statement penalties, $1,141,500 for late payment of
6   wages penalties, $2,509,829 for waiting time penalties, and $1,751,130 for attorneys' fees. Grace
7   Holmes also proposes a second estimate of the amount in controversy based on more conservative
8   violation rate estimates. Under that approach, Grace Holmes estimates that the amount in
9   controversy is $6,916,988.

10  Defendants are allowed to make reasonable assumptions when calculating the amount in
11  controversy. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir.
12  2022) (cleaned up) ("[W]hen calculating the amount in controversy, the parties need not predict
13  the trier of fact's eventual award with one hundred percent accuracy. As is inescapable at this
14  early stage of the litigation, the removing party must be able to rely on a chain of reasoning that
15  includes assumptions … as long as the reasoning and underlying assumptions are reasonable.").
16  But those assumptions cannot be based upon speculation unsupported by evidence. *Ibarra*, 775
17  F.3d at 1199 ("[A]ssumptions cannot be pulled from thin air but need some reasonable ground
18  underlying them."); *id.* at 1197 ("[A] defendant cannot establish removal jurisdiction by mere
19  speculation and conjecture, with unreasonable assumptions."); *Salazar v. Johnson & Johnson*
20  *Consumer Inc.*, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely
21  remanded cases where amount in controversy calculations rely on speculative assumptions
22  unsupported by evidence."); *Contreras v. J.R. Simplot Co.*, No. 2:17–CV–00585–KJM–EFB, 2017
23  WL 4457228, at *2 (E.D. Cal. Oct. 6, 2017) ("When the defendant relies on a chain of reasoning
24  that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying
25  assumptions must be reasonable, and not constitute mere speculation and conjecture.").

26  With respect to some of its estimates, Grace Holmes relies on assumed violation rates that
27  it fails to demonstrate are reasonable. With respect to others, Grace Holmes's assumed violation
28  rates are clearly *un*reasonable.

4

1   Grace Holmes's calculations of the amount in controversy on the minimum wage, meal
2   period, rest period, and business expenses claims *might* be reasonable. But Grace Holmes does not
3   explain the chain of reasoning leading to those assumptions in a manner that would permit the
4   Court to determine their reasonableness. For example, Grace Holmes asserts that a 33% meal
5   period violation rate is reasonable based on Madriz-Rivas's allegation that Grace Holmes "at
6   times[] failed to provide Plaintiff and some, but not necessarily all of the Class with both meal
7   periods as required by California law." It is not clear how Grace Holmes determined that it could
8   reasonably assume a 33% violation rate from the terms "at times" and "some, but not all." Without
9   further explanation, the Court cannot conclude that such an assumption is reasonable. As the court
10  explained in *Peters v. TA Operating LLC*, "the problem is not necessarily that Defendants picked a
11  violation rate that is too high. The problem is that the Court cannot discern why it picked that
12  number at all, because Defendants never adequately explain their chain of reasoning and certainly
13  provide no real evidence in support of it." No. EDCV221831JGBSHKX, 2023 WL 1070350, at *9
14  (C.D. Cal. Jan. 26, 2023); *cf. Cackin v. Ingersoll-Rand Indus. U.S., Inc.*, 2021 WL 2222217, at *3
15  (C.D. Cal. June 2, 2021) ("If one is going to assume a violation rate based on nothing more than
16  language in a complaint referencing a 'pattern and practice,' then there is no basis for suggesting
17  that a violation rate of 25% is any more or less reasonable than a violation rate of once per week or
18  once per month."). While Grace Holmes cites other cases in which courts have found similar or
19  higher assumed violation rates reasonable, it does not adequately explain why the underlying facts
20  of those cases make its assumptions *in this case* reasonable.

21  Grace Holmes also offers an alternative set of calculations based on more conservative
22  estimates of the violation rates, according to which the amount in controversy is $6,916,998.
23  While such conservative estimates seem likely to be reasonable where the complaint alleges
24  general policies or common practices of violating wage and hour statutes, they remain insufficient
25  for purposes of establishing jurisdiction under CAFA to the extent that they are merely
26  "speculative" and "pluck[ed] … out of the air," as they appear to be here. Grace Holmes's
27  reasoning for the assumed more conservative violation rates is as opaque as that underlying its
28  first set of calculations. As in *Peters*, "[a]s far as the Court can tell, Defendants simply picked [the

5

conservative estimate of the] violation rate[s] because it might seem low enough to be facially 'reasonable' and still high enough to keep them on track to hit their magic number of $5,000,000." 2023 WL 1070350, at *9. This is not enough. Based on the negligible reasoning that Grace Holmes offers to justify its assumptions, it would be no more arbitrary to choose the even more conservative estimate of a 5% violation rate for meal and rest period violations, which would make the amount in controversy for those claims $97,068 and $149,165, respectively. As discussed below, when those estimates are used and other unreasonable assumptions are corrected, the total amount in controversy falls below $5,000,000.[1]

In addition to relying on these possibly reasonable but entirely unsupported assumptions, Grace Holmes relies on *unreasonable* assumptions to calculate waiting time penalties for untimely payment of wages at the termination of employment, late payment penalties for untimely payment of wages during employment, and wage statement penalties for failure to provide complete and accurate wage statements, all of which are derivative of the minimum wage, overtime, meal period, and rest period claims. To calculate waiting time, late payment, and wage statement penalties, Grace Holmes assumes a 100% violation rate. It relies on *Wicker v. ASC Profiles LLC*, in which the court held that such an assumption was reasonably supported by evidence because the defendants had shown that it was more likely than not that putative class members each suffered one meal and one rest break violation per week. No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at *4 (E.D. Cal. Mar. 30, 2021). But whether an assumed violation rate is reasonable depends on the specific facts of the case, and in this case Grace Holmes has not shown that it is more likely than not that putative class members each suffered at least one underlying violation per week. As Madriz-Rivas argues, the complaint's allegation that Grace Holmes *at times* failed to provide *some* putative class members with timely final wages does not indicate that 100%, or even 20%, of former employees experienced those violations. If the violation rates for untimely payment of wages and wage statement violations are assumed to be 50%, which is arguably more

---

[1] Grace Holmes similarly fails to explain why it is reasonable to assume that all class members worked off the clock for 5 minutes each shift and incurred $20 in unreimbursed expenses per pay period. Because the amount in controversy falls below $5,000,000 even when these assumptions are used, the Court need not consider what alternative assumptions might be reasonable.

6

reasonable than 100% based on the limiting language of the complaint, the amount in controversy for those three claims alone is reduced by $2,111,040.[2]

Grace Holmes's assumption that the attorneys' fees award in this case will equal 25% of the value of the underlying wage-and-hour claims is also unreasonable, for two reasons. First, the 25% benchmark applies to awards of attorneys' fees in common-fund cases. Where, as here, attorneys' fees are awarded under a fee-shifting statute and calculated using the lodestar/multiplier approach, attorneys' fees may be substantially less or substantially more. Second, because the estimated amount in controversy on the underlying wage-and-hour claims is based on unreasonable assumptions, those claims do not provide a reasonable basis for estimating the amount in controversy with respect to the derivative attorneys' fees.

There is no evidence before the Court from which it might be able to formulate a reasonable estimate of plaintiffs' attorneys' fees based on plaintiffs' counsels' hourly rates and the number of hours likely to be expended in this litigation. But even if attorneys' fees are calculated as 25% of the amount in controversy with respect to the underlying wage-and-hour claims (as Grace Holmes proposes), if violation rates are assumed to be 5% for meal and rest period violations and 50% for untimely payment of wages and wage statement violations, as discussed above, the amount in controversy with respect to plaintiffs' request for attorneys' fees would be $794,082, and the total amount in controversy in this case would be $3,970,409. This amount does not reach CAFA's minimum threshold.

## CONCLUSION

Because Grace Holmes has not established that the amount in controversy exceeds $5,000,000, Grace Holmes has not satisfied its burden of establishing removal jurisdiction by a preponderance of the evidence. Accordingly, the Court remands this case to the Santa Clara County Superior Court.

**IT IS SO ORDERED.**

---

[2] Such a reduction would also lead to a reduction in attorneys' fees, as Grace Holmes has calculated them, by $527,760.

7

1  Dated: January 17, 2025

                                                  P. Casey Pitts
United States District Judge

8